# CIRCUIT COURT OF THE CITY OF FREDERICKSBURG

Central Fidelity
National Bank

v.

Woodyard Auto Sales, Inc.

v.

William E. Newsome, Jr.

March 6, 1997

Case No. CL96-47

BY JUDGE JOHN W. SCOTT, JR.

This matter came before the Court for trial on March 4, 1997. Counsel for the Plaintiff and the Defendant were in attendance, presented evidence, and argued their respective positions before the Court. William Newsome, the third-party defendant, has not made an appearance in this litigation, either in person or by counsel. The facts of this matter are essentially not in dispute.

On December 19, 1994, the Defendant, Woodyard Auto Sales, Inc., sold a used 1994 Ford "F-350" pickup truck to William Newsome, the Third-Party Defendant. In order to finance this transaction, Newsome borrowed $27,540 from the Plaintiff (hereinafter referred to as the "Bank"). The loan proceeds were disbursed directly by the Plaintiff Bank. The sum of $23,450.90 was allocated to pay off the lien on Newsome's vehicle that was used as a "trade-in." The remaining balance of $3,549.10 was sent by the Plaintiff Bank directly to the Defendant, Woodyard Auto Sales, Inc. (hereinafter referred to as "Dealer"). Plaintiff Bank's check to the Defendant Dealer was made payable to "Woodyard Auto Sales, Inc.," and contained the following language on the back:

The payee's endorsement herein is conditioned upon a lien in favor of Central Fidelity National Bank, Box K-181, Richmond, Virginia 23288, in the … [unreadable] … _____ evidenced … [unreadable] … 12-19-94 having … [unreadable] … for title and/or registration … [unreadable] … follows:

Make <u>Ford F350</u> Year <u>1994</u> Serial No. <u>1FTJW35K5REA44364</u> Woodyard Auto Sales, Inc.

Seller's Name Title <u>William Edgar Newsome, Jr.</u>

Buyer's Name

(Pl. Ex. 2.)

According to the Defendant Dealer's balance sheet for this transaction, William Newsome (hereinafter referred to as the "Buyer") needed only $3,025 to close this transaction. Therefore, the Defendant Dealer refunded the sum of $524.10 to Newsome as a consequent of what the Defendant Dealer considered to be an overpayment. The Plaintiff Bank did not instruct the Defendant Dealer as to how it was to dispose of these funds. The only communication between the Plaintiff Bank and the Defendant Dealer until months after this transaction was the tendering of the loan proceeds check.

The Buyer Newsome did not deliver the title for his trade-in vehicle to the dealer on December 19, 1994. That vehicle apparently was not even titled in Newsome's name on the date of the subject transaction because he had failed to pay the sales tax on that vehicle when it was purchased. Consequently, the Dealer, in order to finally obtain the title to the trade-in vehicle, loaned Newsome in excess of $700.00 to pay the sales tax. In the interim, the Defendant Dealer retained all the paperwork that was necessary to transfer the title to Newsome on the vehicle which is the subject of this transaction. Finally, on or about February 15, 1995, almost two months after the financial portion of this transaction had been completed, Newsome tendered the trade-in vehicle's title to the dealer in exchange for the appropriate papers to title the subject vehicle in his name and to perfect the lien of the Plaintiff Bank. None of these documents were ever delivered to the Department of Motor Vehicles for the Commonwealth of Virginia.

The Defendant Newsome paid the February and March 1995 installments on his auto loan to the Plaintiff Bank. His payment for the month of April 1995 was tendered with a "bad check." Newsome filed for bankruptcy on April 24, 1995, listing Central Fidelity National Bank as an unsecured creditor. Given the fact that the Department of Motor Vehicle's records on

the subject vehicle did not reflect any lien, the Bankruptcy Court ordered that the subject vehicle be sold. Proceeds from this sale totaled $18,800.00. The Plaintiff Bank did not receive any of the proceeds from this sale. The Bankruptcy Court notified the Plaintiff Bank approximately one week prior to the entry of its Order that Newsome was about to be discharged. The Plaintiff Bank did not file an Exception to the Discharge. At the time Newsome filed his bankruptcy, he owed Plaintiff Bank the sum of $27,228.88. At the time Newsome's vehicle was sold by the Bankruptcy Trustee, the balance owed to Plaintiff Bank was $27,795.59.

*Opinion*

Plaintiff argues that the Defendant Dealer had a legal duty to insure that the Bank would appear as a lien holder on the title of the subject vehicle and to guarantee that its lien would be perfected through the recordation of the title with the Department of Motor Vehicles. The Defendant contends that it satisfied all of its obligations to the Plaintiff when it prepared and gave to Newsome a Certificate of "Reassignment by Dealer," which listed the Plaintiff as a lien holder. (Def. Ex. B.) The Defendant's agent testified that Newsome was instructed to take the documents to the Department of Motor Vehicles to complete the transfer of title.

There is no statutory provision obligating the Defendant Dealer to record title transfer documents with the Department of Motor Vehicles (hereinafter referred to as "DMV"). Section 46.2-631, Va. Code (1950, as amended), states in pertinent part:

When the transferee of a motor vehicle ... is a dealer who holds it for resale and operates it only for sales purposes under a dealer's license plate, the transferee shall not be required to register it nor forward the Certificate of Title to the Department ... but the transferee, on transferring his title or interest to another person, shall notify the Department of the transfer and shall endorse and acknowledge an assignment and warranty of title on the certificate and deliver it to the person to whom the transfer is made.

In this case, the Defendant Dealer prepared the appropriate documents and tendered them to Mr. Newsome, the person to whom the transfer was made. The requirements of § 46.2-631 were therefore satisfied.

The Plaintiff Bank contends that, once the Defendant Dealer realized that Newsome had failed to affect the transfer of title on his trade-in vehicle and, therefore, could not tender a valid title to that vehicle, Defendant was

therefore placed on notice that this purchaser either could not or would not follow the statutory requirements for recording the title and thereby perfect the Plaintiff's lien. The Defendant Dealer, in fact, became suspicious of Newsome's intentions and refused to give him the documents concerning the title to the purchased vehicle. The title documents to the trade-in and the purchased vehicle were not exchanged until the 15th of February 1995, almost two months after the financial aspects of this transaction were concluded. By holding the documents for more than thirty days after the closing on this transaction, the Defendant Dealer negated the Plaintiff Bank's absolute priority lien on the purchased vehicle. (*See* § 46.2-639, Va. Code (1950, as amended).) However, the Defendant Dealer's violation of this code section does not entitle the Plaintiff Bank to relief under the facts of this case.

Assuming that the United States Bankruptcy Court acted properly in finding that Plaintiff had no priority lien on the subject vehicle, the only basis for any enforceable obligation between the Plaintiff Bank and the Defendant Dealer is the language inserted by the Plaintiff Bank on the back of the loan proceeds check. The Supreme Court of Virginia has ruled that the language on the back of a check, which does not involve the modification of an endorsement, is a contract. In this case, the Plaintiff Bank advised the Defendant Dealer that, "if you want our money, you shall perform a specific act." *Fairfax Bank & Trust Co. v. Crestar Bank*, 247 Va. 356, 360 (1994).

The language on the back of the subject check is, in part, unreadable. Any obligation between the Plaintiff Bank (the payor) and the Defendant Dealer (the payee) must be based on the language that is visible and therefore communicated to both parties. Here, the Defendant Dealer's endorsement (effort to collect the proceeds of the check) is conditioned on the Plaintiff Bank's lien on the purchased vehicle. (*See* Pl. Ex. 2.) The Plaintiff had already established its lien at least as to the purchaser Newsome through the Security Agreement that had been executed by Newsome on December 19, 1994. (Pl. Ex. 1.) The Defendant asserts that it satisfied its obligation to the Plaintiff Bank when it listed the Bank as lien holder on the title transfer documents and tendered them through Newsome with instructions to take them to the DMV.

Plaintiff argues that the language of the endorsement required the Defendant to in fact perfect its lien by recording the documents with DMV.

The Supreme Court of Virginia held in *Fairfax Bank & Trust Co. v. Crestar*, 247 Va. 356 (1994), that the payee was in fact obligated to record the lien. The language on the back of the check in *Fairfax Bank & Trust* specifically stated that the payee "agrees to record a first lien in favor of Crestar Bank" (*Id.* at 358). In the case before this Court, neither the word "record" or "first" appears in the conditional language. If the Plaintiff Bank

required the Defendant Dealer to "record" the lien, or, to guarantee that the lien was "first" in priority, it should have specifically informed the Defendant Dealer of those conditions. This Court reiterates that the Defendant Dealer can only be bound by the language that is communicated, i.e. "readable." The Plaintiff Bank has the responsibility of insuring that its conditions clearly appeared on the back of the check. Plaintiff did not fulfill that responsibility. (*See* Pl. Ex. 2.)

There is language on the back of the check that refers to "for title and/or registration. ..." These words are proceeded and followed by blank spaces and parts of letters that are unintelligible. This language, standing alone, does not establish any additional obligation or condition to be satisfied by the payee.

No additional instructions were transmitted by the Plaintiff Bank to the Defendant Dealer concerning the disposition of the loan proceeds. Plaintiff's argument that the Defendant should have known that the Dealer was required to record the title document because the proceeds check exceeded the actual cost of the transaction is not founded. The amount by which the proceeds check exceeded the cost of the transaction does not equal the amount of the sales tax, the cost of recording the title documents, or the total of these two items.

Plaintiff also contends that, given the custom and business practices of the motor vehicle sales industry, Defendant should have known that the use of the term "lien in favor of Central Fidelity National Bank" served as notification to the Defendant Dealer that the lien had to be recorded with the DMV. The Plaintiff further asserts that the Defendant should have known, given the business practices of the trade, that its lien had no effect as to the general public until it was recorded. The Defendant Dealer takes the position that this language required that it list the Plaintiff Bank as the lien holder on the title transfer documents. The only evidence before this Court as to what constitutes the business practice of this industry was the testimony of the Defendant's agent. This testimony, which was uncontradicted, was that the Defendant Dealer prepared the title transfer document and tendered them to the purchaser with instructions to take these documents to DMV. While the Defendant Dealer recognized that it had the option to charge purchasers for the recording service, it had made a business decision not to participate in the recordation process. This Court finds that, given the language on the back of this check, the Defendant Dealer's interpretation and actions were reasonable and satisfied Plaintiff Bank's communicated requirements.

Wherefore, judgment is entered in favor of the Defendant, Woodyard Auto Sales, Inc.